## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| JAN TE NIJENHUIS, § | |
|     *Plaintiff*, § | |
| § | CIVIL ACTION No. 1:25-cv-295 |
| v. § | |
| § | |
| RATIONALWIKI FOUNDATION, INC. § | |
| d/b/a RATIONALMEDIA FOUNDATION, § | **JURY DEMANDED** |
| TRENT TOULOUSE, LARRY WILL, § | |
| SIMON HUGHES and JOHN DOES 1-3, § | |
|     *Defendants*. § | |
| § | |

## VERIFIED COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, JAN TE NIJENHUIS, Ph.D., by and through undersigned Counsel, Aaron T. Cress, Esq. (LATE NIGHT LAW, LLC), and hereby respectfully complains and shows as follows.

### PARTIES, JURISDICTION & VENUE

1. Plaintiff Jan te Nijenhuis is a citizen of the Netherlands.

2. Defendant RationalWiki Foundation, Inc. d/b/a RationalMedia Foundation, is a New Mexico domestic nonprofit corporation and 501(c)(3), EIN 27-3197280, with its principal place of business located in New Mexico, at 122 Girard Ave NE Albuquerque, NM 87106.

3. Defendant Trent Toulouse is a resident of Albuquerque, New Mexico and a Board Trustee of Defendant RationalWiki Foundation, Inc.

4. Defendant Larry Will is a resident of Mount Airy, Maryland and a Board Trustee of Defendant RationalWiki Foundation, Inc., who goes by the online pseudonym "Cosmikdebris."

5. Defendant John Doe 1 is a resident of Kansas, and a Board Trustee of Defendant RationalWiki Foundation, Inc., whose identity is unknown to Plaintiff upon reasonable investigation, and who goes by the online pseudonym "DuceMoosolini."

6. Defendant John Doe 2 is an editor of a website published by Defendant RationalWiki Foundation, Inc., whose identity is unknown to Plaintiff upon reasonable investigation, and who goes by the online pseudonym "Asela." Upon information and belief, this individual is a United States citizen.

7. Defendant John Doe 3 is an editor of a website published by Defendant RationalWiki Foundation, Inc., whose identity is unknown to Plaintiff upon reasonable investigation, and who goes by the online pseudonym "Techpriest." Upon information and belief, this individual is a United States citizen.

8. The Court has personal jurisdiction over the Defendants by virtue of their continuous and systematic business contacts with New Mexico, and because the events and transactions subject of this Complaint occurred in New Mexico.

9. Plaintiff invokes the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of costs and interest, and because no Defendant is a resident of the same state as the Plaintiff.

10. Venue is proper before the Court.

## GENERAL ALLEGATIONS

I. **RATIONALWIKI FOUNDATION, INC. IS AN INFORMATION CONTENT PROVIDER**

11. Under 47 U.S.C. § 230, an "interactive computer service" is afforded certain protections from civil liability. However, Section 230 distinguishes between an "interactive computer service," and an "information content provider," which does not enjoy such protections.

12. Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server…" 47 U.S.C. 230(f)(2).

13. Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service." 47 U.S.C. 230(f)(3).

14. Defendant RationalWiki Foundation, Inc. ("RWF") is an information content provider.

15. RWF publishes, maintains and operates a website, at https://rationalwiki.org (the website, hereinafter referred to as, "RationalWiki").

16. RWF was incorporated in 2011 by Defendant Trent Toulouse, a resident of New Mexico.

17. Since 2011, Toulouse has served continuously as both a Board Trustee, and Operations Manager, of RWF.

18. The Operations Manager within RWF functions as an executive officer.

19. As Operations Manager, Toulouse has the sole ability to alter settings and create functions and extensions on the website server.

20. The website server is, and at all times relevant was, located in New Mexico.

21. The website server is, and at all times relevant was, operated from New Mexico.

22. Toulouse has operated and managed RationalWiki—the website—from New Mexico continuously, since at least 2011, until the present.

23. New Mexico is the principal geographic locus of RWF's and RationalWiki's operations.

24. RWF is governed by a Board of Trustees. Other than Toulouse, and an individual named David Gerard, all past and current Trustees use pseudonyms on RationalWiki.

25. Since 2011, only twenty-seven individuals have ever served as Trustees of RWF.

3

26. RationalWiki has over 8,000 discrete articles and millions of unique monthly visitors.

27. RationalWiki's "Community Standards" page was created and heavily edited by Defendant Toulouse, and has been edited by Defendants Will and Does 1 and 3 within the last three years.

28. The page states, *inter alia*, that: (i) RationalWiki articles should take a "snarky" (meaning, snide or derisive) tone; that (ii) RationalWiki has a "scientific point of view," meaning that "our articles take the side of the scientific consensus on an issue"; and that (iii) all content on RationalWiki must conform to the "RationalWiki Mission."

29. The "RationalWiki Mission" page, in turn, states, *inter alia*, that:

> The RationalWiki Mission is:
>
> 1. Analyzing and refuting pseudoscience and the anti-science movement;
> 2. Documenting the full range of crank ideas;
> 3. Explorations of authoritarianism and fundamentalism.
> 4. Analysis and criticism of how these subjects are handled in the media.
>
> We also have a fifth, unofficial purpose, which is to provide people who agree with the previously-stated goals a place to just hang out and have fun with like-minded people.
>
> RationalWiki is not a general encyclopedia; it does not require articles on every known subject. However, the wiki's mainspace welcomes many articles that do not relate to the primary missions of RationalWiki providing that they are factually accurate and of interest to the community at large. These include articles on general science, historical events and important individuals throughout the world.

30. Various other policy pages on RationalWiki explicate and clarify this viewpoint further. For example, each of the six underlined words in the above-quoted portion of the RationalWiki Mission denotes a hyperlink, which opens a separate page containing an article on that topic, i.e., on "pseudoscience," "authoritarianism," etc. These articles further define what is meant by those terms as they are used in the RationalWiki Mission statement and throughout RationalWiki.

31. RationalWiki holds its content out as scientifically authoritative, and objective truth.

4

32. For example, a fundraiser banner that has appeared at the top of every page on RationalWiki since late 2024 reads, in part,

> Fighting pseudoscience isn't free… We are… hundreds of volunteers who document pseudoscience and crankery around the world every day… [W]e believe we play an important role in defending truth and objectivity.

33. This banner links to a "Fundraiser" page created by Defendant Toulouse, that has been edited within the last two years by Defendants Will and Doe 3, and contains the same statements.

34. RationalWiki claims that anyone with access to the internet can "edit" (i.e., alter or contribute to the content of) the website, by authoring or editing the articles that appear there, in the nature of an interactive computer platform as defined under 47 U.S.C. § 230(f)(2).

35. This is not true in practice.

36. A very particular, highly ideologized, and readily identifiable left-liberal view of what is rational, what constitutes legitimate science, and what constitutes scientific consensus, pervades all of RationalWiki's articles, with virtually no variation.

37. Editors' contributions that contravene this viewpoint, or the RationalWiki Mission, are quickly removed from RationalWiki by a core of specialized editors, which includes Defendants Toulouse, Will, and Does 1-3.

38. This core of specialized editors actively, regularly, and aggressively enforces RationalWiki's Mission and viewpoint. Articles that are not "on mission" are deleted or altered, edits that are not "on mission" are quickly reverted, and editors who do not uphold the Mission are blocked from contributing.

39. This core of specialized editors includes sysops, techs, and moderators. Most editors (including sysops, techs, and moderators) are anonymous, and use pseudonyms on the website.

40. Of these specialized editors, sysops are the lowest-ranking. There are approximately 1500 pseudonymous usernames listed as sysops on RationalWiki, though the true number of active individual sysops is lower than 200 individuals.

41. A page on RationalWiki titled, "Sysop guide" sets forth requirements that sysops must follow, including, "Checking edits by unknown contributors for untruth," and "to collaborate with others to further <u>RationalWiki's mission</u>." The underlined term denotes a hyperlink to the "RationalWiki Mission" page.

42. Techs, moderators, and sysops have authority to alter, block and censor content created by rank-and-file editors, in order to enforce the "Mission."

43. Techs and moderators have more extensive authority to block and censor than sysops and other editors do.

44. Techs and moderators are the highest-ranking editors of RationalWiki. There are only fifteen techs, seven of whom, including Defendants Will, Toulouse, and Doe 3, are current and/or past RWF Board Trustees. There are only six moderators (three of whom, including Defendant Doe 1, are current and/or past RWF Board Trustees).

45. Extensive canvassing of the articles on RationalWiki reveals that virtually all of the articles appearing there have been edited by one or more techs, one or more moderators, and one or more past or current Board Trustees, and that Defendants Toulouse, Will, and Does 1-3 have each edited thousands of articles and regularly confer, in various open chat pages, about what content to publish, alter, or censor.

46. RationalWiki's Mission and viewpoint of what constitutes legitimate science are so rigid, ideologized and dogmatic that, e.g., an article on the website, about the world-renown (and thoroughly mainstream) physicist and popular author Michio Kaku describes Kaku as "a crank"

6

who has "unorthodox views," and compares Kaku to notorious conspiracy theorist David Icke (who has only a high school education and is famous for propounding his belief on social media that world leaders are "lizard people," i.e., shape-shifting reptiles from another dimension.)

47. No particular background, knowledge, training, or credential—academic, scientific, or otherwise—is required to be an editor, sysop, tech, moderator, or Trustee of RationalWiki. The only requirements to "edit" (i.e., to create or alter content) are to adhere to RationalWiki's Mission and uphold its point of view, to adhere to various non-ideological behavior rules and procedures for decision-making, and submit to oversight by higher ranking editors.

48. An article created by Toulouse in 2011, titled "Legal FAQ," has appeared on RationalWiki continuously since that time. It describes RationalWiki as a "content producer." This article was created by Toulouse and has been heavily edited by Toulouse, by current tech David Gerard, as well as by Defendant Will.

49. Individuals who are the subject of laudatory articles on RationalWiki are those whose views conform to the RationalWiki point of view.

50. However, consistent with RationalWiki's Mission of "fighting [so-called] pseudoscience," most articles about individuals on RationalWiki are disparaging and accuse the subjects of being cranks, fascists and pseudoscientists.

51. When a disparaging article about an individual appears on RationalWiki, this suggests that the person who is the subject of the article is a crank, a fascist, or a pseudoscientist.

## II. DEFENDANTS ARE DEFAMING PLAINTIFF

52. Plaintiff Jan te Nijenhuis is a psychologist, who has worked as a professor at the University of Amsterdam and Leiden University (both of which are ranked in the top 200 universities in the world) and at the Vrije Universiteit Amsterdam. He has his Ph.D. in Industrial

7

and Organizational (or "I/O") psychology. Throughout his career, Dr. te Nijenhuis's research has focused primarily on I/O psychology.

53. Dr. te Nijenhuis has authored or co-authored nearly 100 peer-reviewed scholarly publications, the vast majority of which are published in Q1 scientific journals.[1] Dr. te Nijenhuis's publicly viewable Google Scholar profile shows that he has an h-index of 31, after more than thirty years of publishing,[2] and has been cited by other scholars (mostly in psychology and the social sciences) over 3,900 times.

54. Plaintiff is not a public figure.

55. RationalWiki contains an article titled "Jan te Nijenhuis." The article was first published in 2018. It has been edited by Defendants Does 2 and 3.

56. The article portrays Dr. te Nijenhuis as a white supremacist and a pseudoscientist.

57. The article is false because Dr. te Nijenhuis is not a white supremacist or pseudoscientist.

58. Toward the bottom of the article, under a heading titled, "External Links," a hyperlink to Dr. te Nijenhuis's publicly viewable Google Scholar profile appears. Thus, Defendants are aware of Dr. te Nijenhuis's publication history, his h-index, and the number of times he has been cited by other academics, all of which is set forth on his Google Scholar profile.

59. The article states that, "**Jan te Nijenhuis** is a Dutch <u>HBD</u> pseudoscientist…"

60. This statement strongly implies that Dr. te Nijenhuis's work focuses primarily on HBD.[3]

61. The statement is false because Dr. te Nijenhuis is not a "pseudoscientist," and his work does not focus primarily on "HBD."

---

[1] Q-score is an index of a scholarly journal's impact, with Q1 being the top 25% of journals in their domain.
[2] h-index is a measure of a scientist's personal impact in their field. An h-index of 20 after 20 years of publishing is considered excellent and makes a scientist competitive for tenure-track positions.
[3] "HBD" is shorthand for the term, "human biodiversity"—a postulate that addresses the genetic and phenotypic diversity of the human species, and is often conflated with the more controversial view of some of its proponents that race is a real biological category and not just a social construct.

8

62. The RationalWiki article about Dr. te Nijenhuis goes on to state,

> …Nijenhuis [*sic*] is careful to not explicitly advocate <u>white supremacism</u> to avoid damaging his academic reputation at the University of Amsterdam,[3] but uses a more subtle approach of supporting the same viewpoint i.e. a racial hierarchy in intelligence.

63. This statement is completely speculative and lacks any factual basis.

64. The statement explicitly calls Dr. te Nijenhuis a white supremacist.

65. The statement strongly implies that Dr. te Nijenhuis a white supremacist.

66. No citation is provided in support of that statement—footnote 3 in the above-quoted passage merely cites a now-defunct page on the University of Amsterdam website which used to contain a faculty member profile of Dr. te Nijenhuis.

67. The underlined word ("white supremacism") in the statement denotes a hyperlink which links to an article titled "White supremacy." That article has been edited within the last three years by Defendants Will, Hughes and Doe 1, and defines "white supremacy" as follows:

> **White supremacy** or **white supremacism** is an ideology claiming that white people are superior to other races, and are a 'master race'…

68. By defining "white supremacy" this way, and stating that Dr. te Nijenhuis is a white supremacist, while linking to the article that gives this definition, Defendants assert that Dr. te Nijenhuis is a white supremacist to whom that definition applies.

69. That definition does not apply to Dr. te Nijenhuis.

70. Dr. te Nijenhuis has never "claim[ed] that white people are superior to other races and are a 'master race.'"

71. In the RationalWiki article about Dr. te Nijenhuis, at the bottom of the page, a list of "categories" appears, which Dr. te Nijenhuis purportedly belongs in. These categories include "Racism," "Pseudoscience promoters," and "Racialism pseudoscientists." Each of the

9

"categories" in the list is hyperlinked to another page on RationalWiki which lists individuals who purportedly belong in that category.

72. On the "Categories:Racism" page where Dr. te Nijenhuis is listed, a conspicuous, highlighted note appears in bold font, which reads, "*See the main article for this category, Racism.*" The underlined word denotes a hyperlink which links to an article titled "Racism." That article has been edited within the last three years by Defendants Will and Hughes, and defines "racism" as follows:

> **Racism** is the belief that humans can be meaningfully defined into biological ethnic categories in order to separate supposed superior from inferior races and/or generally showing discrimination or hostility against a person(s) on the basis of their race. It is based upon the irrational belief that superficial differences among races 'determine cultural or individual achievement.' Racism manifests in negative discrimination based upon race in a particular culture.

73. By defining "racism" this way, categorizing Dr. te Nijenhuis under "Racism," and listing him on the "Categories:Racism" page, Defendants assert that Dr. te Nijenhuis is a racist to whom that definition applies.

74. That definition does not apply to Dr. te Nijenhuis.

75. Dr. te Nijenhuis has never argued for "discrimination or hostility against a person on the basis of their race," or engaged in "negative discrimination based upon race…"

76. On the "Categories:Pseudoscience promoters" page where Dr. te Nijenhuis is listed, a conspicuous, highlighted note appears in bold font, which reads, "*See the main article for this category, Pseudoscience.*" The underlined word denotes a hyperlink which links to an article titled "Pseudoscience." That article has been edited within the last three years by Defendants Will and Doe 1, and defines "pseudoscience" as follows:

> **Pseudoscience** describes any belief system or methodology which tries to gain legitimacy by wearing the trappings of science but fails to abide by the rigorous methodology and standards of evidence that are the marks of true science. Promoters of

10

pseudoscience often adopt scientific vocabulary, describing conjectures as <u>hypotheses</u>, <u>theories</u>, or <u>laws</u>, providing <u>"evidence" from observation</u> and <u>"expert"</u> testimonies, or even developing what appear to be mathematical models of their ideas. However, in pseudoscience, there is no honest attempt to follow the <u>scientific method</u>, provide <u>falsifiable</u> predictions, or develop <u>double-blind</u> experiments. Although pseudoscience is designed to appear scientific, it lacks all of the substance of science.

77. By defining "pseudoscience" this way, categorizing Dr. te Nijenhuis under "pseudoscience promoters" and listing him on the "Categories:Pseudoscience promoters" page, Defendants assert that Dr. te Nijenhuis is a pseudoscientist to whom that definition applies.

78. That definition does not apply to Dr. te Nijenhuis.

79. Defendants have no basis for calling Dr. te Nijenhuis a "pseudoscientist" or a "pseudoscientist promoter."

80. Dr. te Nijenhuis is a real scientist with an h-index of 31, who has authored nearly 100 peer-reviewed scholarly publications over a more than thirty-year career. He has taught and performed research at reputable universities for many years and has worked as a consultant for governments and corporations. His scholarly work has been cited over 3900 times by other scientists, which is at the level of a well-known scientist within his field of expertise.

81. Defendants, on the other hand, have no known academic credentials or scientific bona fides, other than Defendant Will (who purports on LinkedIn to have earned a B.S. in computer science after seven years at the University of Maryland) and Defendant Toulouse (who teaches at a community college, is listed as a co-author of only five scholarly publications over his entire career, which is generally considered an embarrassingly low output for a senior scientist, and whose work is of such low impact that he does not even have an h-index or a profile on ResearchGate or Google Scholar.)

11

### III. DR. TE NIJENHUIS IS BEING DAMAGED

82. The "Jan te Nijenhuis" article was published on RationalWiki in 2018, and has remained published and viewable on the website since that time.

83. From at least 2020 until the present, the article has continuously ranked at the top of the first page of Google search results for Dr. te Nijenhuis's name.

84. Google favors a small number of information content providers and artificially boosts those providers' content in search results.

85. These favored information content providers include RationalWiki.

86. Defendants are, and were at all times relevant, aware of this.

87. Defendants are, and were at all times relevant, aware that RationalWiki's page rank on Google is high.

88. Defendants are, and were at all times relevant, aware that as a result of RationalWiki's high page rank, when they publish disparaging articles like the one about Dr. te Nijenhuis, this is likely to cause considerable reputational damage to the subjects and targets of that content, and is likely to discourage third parties from dealing with the individuals targeted.

89. Google's search engine is widely and commonly used all over the world by mutual contacts, colleagues and potential business associates when seeking information about one another during the process of forming business and professional relationships and agreements.

90. Defendants are, and were at all times relevant, aware of this.

91. Because the RationalWiki article about Dr. te Nijenhuis ranks on the first page of Google search results for Dr. te Nijenhuis's name, Dr. te Nijenhuis's colleagues and potential business associates see the article when they search for Dr. te Nijenhuis on Google.

92. Defendants are, and were at all times relevant, aware of this.

93. Due to RationalWiki's claims of scientific objectivity, its resemblance to Wikipedia, and its high page rank in Google search results, the website appears authoritative, thus discouraging others from dealing with individuals who are the subject of disparaging articles on the website, including Dr. te Nijenhuis.

94. Defendants are, and were at all times relevant, aware of this.

95. RationalWiki's "Jan te Nijenhuis" article's high rank in Google search results for Dr. te Nijenhuis's name, alone, is enough to raise reputational concerns serious enough to discourage others from dealing with Dr. te Nijenhuis.

96. Defendants are, and were at all times relevant, aware of this.

97. These factors, coupled with the website's characterization of Dr. te Nijenhuis as a white supremacist, a racist, and a pseudoscientist—alongside highly particularized and deeply stigmatizing definitions of those terms—are humiliating and stressful to Dr. te Nijenhuis, and discourage others from dealing with him.

98. Defendants are, and were at all times relevant, aware of this.

99. The RationalWiki article about Dr. te Nijenhuis has been seen by numerous colleagues and potential business associates and caused them to refrain from dealing with Dr. te Nijenhuis.

100. There is virtually no other detailed, generally-accessible disparaging content that appears in Google search results for Dr. te Nijenhuis's name.

101. Dr. te Nijenhuis used to be invited frequently to teach courses in assessment, personnel selection, and Human Resource Management at Dutch institutes of higher learning.

102. It is often difficult to find psychologists who have a background in scientific research on these topics and also have practical experience in working as a consultant outside academia, as Dr. te Nijenhuis has.

103. However, over the past three years, Dr. te Nijenhuis has received no more teaching invitations.

104. This resulted directly from the RationalWiki article and its prominence in Google results, because organizations that are considering hiring Dr. te Nijenhuis first search for him on Google and are exposed to the RationalWiki article, which is the only disparaging content about Dr. te Nijenhuis to appear prominently in Google search results.

105. Recently, Dr. te Nijenhuis applied for several positions in applied psychology at Dutch universities, but was not hired for any of these positions, and was forced to take a position at a South Korean university and change his field to a completely different topic, just in order to survive financially.

106. This resulted directly from the RationalWiki article and its prominence in Google results, because organizations that are considering hiring Dr. te Nijenhuis first search for him on Google and are exposed to the RationalWiki article, which is the only disparaging content about Dr. te Nijenhuis to appear prominently in Google search results.

107. The overwhelming majority of I/O psychologists begin their careers outside academia, in the private sector. This creates strong demand (both in the private, public, and non-profit sectors) for I/O psychologists with backgrounds in academic research.

108. Dr. te Nijenhuis has extensive experience as an academic and research I/O psychologist.

109. As a result, for many years Dr. te Nijenhuis was frequently invited to perform well-remunerated consulting work in the private sector and for the Dutch Ministry of Defense.

110. However, over the past three years, Dr. te Nijenhuis has not been invited to do any such consulting work.

111. This resulted directly from the RationalWiki article and its prominence in Google results, because organizations that are considering hiring Dr. te Nijenhuis first search for him on Google and are exposed to the RationalWiki article, which is the only disparaging content about Dr. te Nijenhuis to appear prominently in Google search results.

112. For decades, Dr. te Nijenhuis has taken periodic invitations, from various publications, to write about scientific topics for a lay audience.

113. Over the past three years, Dr. te Nijenhuis has not received even one such invitation.

114. This resulted directly from the RationalWiki article and its prominence in Google results, because organizations that are considering hiring Dr. te Nijenhuis first search for him on Google and are exposed to the RationalWiki article, which is the only disparaging content about Dr. te Nijenhuis to appear prominently in Google search results.

115. Recently, Dr. te Nijenhuis was told by a senior professor, a leader in his field, that he could not be considered for employment by the department with which the senior professor was associated, because he (Dr. te Nijenhuis) has a bad reputation.

116. Upon information and belief, this resulted directly from the RationalWiki article and its prominence in Google results.

117. In December 2022, Dr. te Nijenhuis was interviewed for an article in a prominent academic publication. The article was later rejected for publication on the purported grounds that Dr. te Nijenhuis is a racist.

118. Upon information and belief, this resulted directly from the RationalWiki article and its prominence in Google results.

119. The number of citations by other academics to Dr. te Nijenhuis's work has decreased sharply over the last three years.

120. This results directly from the RationalWiki article and its prominence in Google results.

121. Over the past three years, Dr. te Nijenhuis has received no invitations to teach, do consulting work, or work as a science writer for the popular (lay) press.

122. This resulted directly from the RationalWiki article and its prominence in Google results.

123. As a result of lost teaching opportunities caused by the RationalWiki article, Dr. te Nijenhuis has lost at least €70,000 per year over the past three years.

124. As a result of lost consulting opportunities caused by the RationalWiki article, Dr. te Nijenhuis has lost at least €35,000 per year over the past three years.

125. As a result of lost publishing opportunities caused by the RationalWiki article, Dr. te Nijenhuis has lost at least €5,000 per year over the past three years.

126. As a result of overall lost opportunities caused by the RationalWiki article, Dr. te Nijenhuis has lost a total of at least €330,000 over the past three years.

127. The RationalWiki article about Dr. te Nijenhuis and its prominent ranking in Google search results continue to stigmatize him, prevent others from dealing with him, and cause Dr. te Nijenhuis humiliation, mental anguish, and suffering.

## ENUMERATED CAUSES OF ACTION

WHEREFORE the Plaintiff, JAN te NIJENHUIS, Ph.D., as a direct and proximate result of Defendants' misconduct, has been damaged, and hereby pleads the following causes of action against Defendants, whom he seeks to hold liable:

## COUNT I
### Defamation
### Against All Defendants

128. Plaintiff incorporates by reference all preceding paragraphs.

129. Defendants published false statements of fact about Plaintiff to third parties.

130. Defendants published aforesaid false statements without privilege.

131. Aforesaid third parties understood the false statements to have defamatory meaning.

132. Defendants published the false statements while knowing they are false.

133. Defendants published the false statements with reckless disregard for the truth.

134. Defendants' defamation is wanton and willful.

135. Defendants published the false statements negligently.

136. As a direct and proximate result of Defendants' defamation, the Plaintiff has suffered and continues to suffer pecuniary damages and reputational harm, humiliation, mental anguish and suffering, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

## COUNT II
### Invasion of Privacy: False Light
### Against All Defendants

137. Plaintiff incorporates by reference all preceding paragraphs.

138. Defendants published statements about Plaintiff in public fora, attributing false characteristics to Plaintiff.

139. The characteristics which Defendants falsely attributed to Plaintiff are highly offensive to a reasonable person.

140. Defendants intentionally portrayed Plaintiff in a false light before the community.

141. Defendants recklessly portrayed Plaintiff in a false light before the community.

142. Defendants portrayed Plaintiff in a false light without privilege.

143. Defendants' false light invasion of privacy is wanton and willful.

144. As a result of Defendants' false light invasion of privacy, Plaintiff has suffered humiliation, mental anguish, and suffering.

145. As a direct and proximate result of Defendants' false light invasion of privacy, the Plaintiff has been damaged, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

## COUNT III
### Conspiracy
### Against All Defendants

146. Plaintiff incorporates by reference all preceding paragraphs.

147. Defendants intentionally agreed to defame Plaintiff

148. Defendants intentionally agreed to violate Plaintiff's privacy.

149. Defendants agreed to defame Plaintiff with knowledge of unlawfulness.

150. Defendants agreed to violate Plaintiff's privacy with knowledge of unlawfulness.

151. One or more Defendants acted overtly in furtherance of each of aforesaid agreements.

152. As a direct and proximate result of Defendants' conspiracy, the Plaintiff has suffered and continues to suffer pecuniary damages and reputational harm, humiliation, mental anguish and suffering, and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

**COUNT IV**
**Prima Facie Tort**
**Against All Defendants**

153. Plaintiff incorporates by reference all preceding paragraphs.

154. Defendants jointly and severally committed intentional acts directed at Plaintiff.

155. Defendants committed aforesaid acts with intent to injure the Plaintiff.

156. Defendants committed aforesaid acts without justification.

157. Aforesaid acts were wanton and willful.

158. Aforesaid intentional acts were otherwise lawful.

159. Plaintiff was damaged as a result of aforesaid acts.

160. As a direct and proximate result of Defendants' prima facie tort, the Plaintiff has been damaged and is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorney fees and all costs of bringing this action, and such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff, JAN te NIJENHUIS, Ph.D., hereby respectfully prays the Court's relief, as follows:

  I.   Compensatory damages in the amount to be proven at trial.

  II.  Punitive damages.

  III. Pre- and post-judgment interest.

  IV.  Attorney fees and all costs of bringing this action.

  V.   Such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

LATE NIGHT LAW, LLC

By: /s/ Aaron T. Cress
Aaron T. Cress, Esq.
12231 Academy Rd NE 301-274
Albuquerque, NM 87111
aaron@latenightlaw.com
(505) 225-2623

*Attorney for Plaintiff Jan te Nijenhuis*